And we'll move on to the third case on the docket. Ryan White v. Officers Mesa and Pena. And Ms. McNulty is here for the appellate. And Mr. Reed David is here for the appellee. White. And so, Ms. McNulty, you may begin with your argument. Thank you, Your Honor. Carrie McNulty, Senior Appellate Counsel on behalf of the City of Miami, here on behalf of Appellant City of Miami Police Officers Andrew Mesa and Jose Pena. I would like to reserve four minutes for rebuttal. This is an appeal of a denial of the officer's motion for summary judgment on the basis of qualified immunity with respect to an excessive force claim and a related and dependent claim for summary judgment based on a state law battery claim. The underlying incident is a July 2, 2015 arrest of Plaintiff Ryan White. White was a passenger in a vehicle that was reported in a 911 call as being driven by the suspects in a robbery at a bank. Shortly after, the information was dispatched to the police by the 911 dispatcher. The police located the vehicle and engaged with The car was ultimately corralled into a dead-end street. The driver exited the vehicle immediately and laid on the ground and was taken into custody without incident. Plaintiff White, however, remains in the passenger seat of the vehicle. After being approached by several officers, including the defendant officers, White was forcibly removed from the vehicle and a struggle ensued before he was ultimately detained about 90 seconds later. The district court denied summary judgment because the court determined that there were issues of fact as to several issues, including whether the plaintiff resisted arrest or was attempting to flee and whether the crime at issue was severe or not. While the officers recognized that in the summary judgment posture, any disputed facts are taken in the light most favorable of the non-moving party, they would respectfully suggest that the district court erred on two important points when viewing the evidence presented here. First, the district court judge entirely discredits the video evidence of the incident, which the officers assert contradicts the plaintiff's version of the facts on a key point. This is Judge Wilson. Let me let me interrupt you. If that's the case, if there's a dispute about the facts and your clients are challenging the district court's determination of which facts were adequately supported by the evidence, why do we have jurisdiction? Why do we have appellate jurisdiction to consider the denial of the motion for summary judgment? Because we're not considering, we're not considering the application of legal principles to a given set of facts. There's a dispute about the facts and you're challenging the facts that the district court relied upon to support its decision. Well, first of all, your standard of review is de novo, so you're allowed to look at the record evidence. What we're focusing on here is the fact that there's a video of the incident. Even though the district court judge discredited the video and said that she couldn't tell anything from the video, our argument is that if you look at the non-movement version of the facts, then there is no dispute and the video trumps. That if you look at that video evidence, the video shows that the plaintiff's version of the facts is simply not true with respect to whether he was resisting and whether he attempted to flee. Mr. Counsel, I think the thrust of the question from Judge Wilson is that all you seem to really be arguing about is a question of fact, that there's no real dispute about what the operative law would be. It's purely fact-based, in which case we would not have interlocutory jurisdiction to entertain the matter at this point. You could raise the summary, later, after there was a trial or in the course of a trial with the district court, and if you lost then, you could raise qualified immunity again with this court. I think the thrust of the question is, do we have interlocutory jurisdiction to entertain your appeal from what appears to be simply a debate about the controlling facts? I understand the question, Your Honor, but that's if there is only disputed issues of fact. But what we're arguing here is that there can't be disputed issues of fact when the video clearly governs. You're looking at a video. That's cold record evidence that you can look at, that the district court can look at. This is not a he said, they said situation, which is what the district court... I understand that typically, if the situation is that the officer said another, and it's just clearly a disputed issue of fact, then summary judgment needs to be denied on qualified immunity, and there's nothing to appeal to just two different versions of the incident. But this is a situation where there is record evidence that you can look at, that you're in no worse of a situation to analyze than the district court was, and that under the case law, if the video reflects something differently than what the plaintiff is saying, then that is... Didn't the district court determine that the video is not really clear, sufficiently clear to support the officer's version of the facts and their conclusion that Mr. White did not resist arrest? And the video is not that clear. So, your honor, the district court did entirely discredit the video in terms of having any sort of probative value in terms of this analysis, but the officers would urge the court to look carefully at the video. Now, I know I've probably watched this video more times than I'd like to admit, but if you look at the video between two minutes and 28 seconds and two minutes and 37 seconds, it's a nine-second segment of the video, you can clearly see the plaintiff is up off the ground. His hands are flailing about, so they're not being held behind his back by the officers, and his feet take two or three steps on the ground. So, his testimony in his back by the officers, that they lifted him and they had complete control of his arms and limbs, and that they then slammed him to the ground, and that's when he sustained the facial injuries, which were... His broken nose was the majority of his injuries here. Well, let's see. Now, the officers say that he attempted to evade arrest by grabbing tennis shirt and standing up and taking several steps, but then we have whites claim that he was lifted and then violently thrown down to the ground, and that's not conclusive. I mean, neither version is conclusive from the video. Either set of facts could be found by the jury in this case, and if that's the case, it seems like there are disputed issues of fact. And if these facts are in dispute and the officers are challenging those facts, then we would not have jurisdiction to consider the denial of the motion for summary judgment, it seems to me. I understand, Your Honor. I would just urge the court to look, compare the plaintiff's deposition testimony where he indicates that the officers had his hand held behind his back during the time when he was lifted off the ground to the video, where you can see that his hands are free, and to the case law where an officer... A suspect's hand being free is a reason for the application of force in order to restrain those hands and get them handcuffed, and I would just assert that that is what was happening here, and the video does support the officer's version of the story and not the plaintiff's deposition testimony where he said that they were holding his hands behind his back, lifted him up, and slammed him to the ground. Ms. McNulty, this is Judge Bush. I have a question for you about the case law in the 11th Circuit. Do you have any case where the 11th Circuit reversed a district court's finding that there was disputed issues of material fact for qualified immunity at the summary judgment stage, where the 11th Circuit did that relying upon a video of the encounter and just ruled, as you're asking us to do here, that the video conclusively contradicted the district court's finding? Your Honor, I think all of the cases I have involving the video are an opposite. Thank you, Ms. Tisa. If I'm not mistaken, I believe that the United States Supreme Court case in Scott v. Harris might have been a reversal on that basis, ultimately. I think. I'm not 100% sure, but I think it was. Are you aware of any cases from any other circuit that a court of appeals has done that, relied on a video to overrule a district court's finding of disputed facts? I don't have any, Your Honor, but I would say that it's a de novo review. I understand what the court is questioning in terms of if it's a disputed issue of fact, you don't have jurisdiction for a qualified immunity appeal, but if you overlay the case law about video evidence being something that can trump an assertion that contradicts the video evidence and the fact that you have generally de novo review of this type of appeal, I think that gets you there. I think that you can look at a video. There's no reason why an appellate court can't look at a video and say, we're looking at this video and we see this and we think it contradicts the testimony of the non-movement on summary judgment. Now, I understand if you disagree that the video does that, but I think it's something you can do in terms of- Let me ask the question, counsel, this way. Let's assume for the purposes of my question that the video is not dispositive and conclusive. I agree with you that if the video was clear as a bell and was close up, it could trump everything else. But it was more than 150 feet. It was blocked by a couple of cars and you can't see the action with the clarity that you would need. And let's assume you were to accept the plaintiff's posture of the fact to it that he was down, he wasn't resisting, and that they picked him up and flung him to the ground on 12 or 14 occasions and tried to choke him. Under those circumstances, would the officers be entitled to qualified immunity? No, your honor. Okay, then where's the legal question for us that would give us interlocutory appeal? It seems to me this is just a fact question who struck John, period. And while you may be right and you may be entitled to a judgment based on qualified immunity, it doesn't seem to me that you're entitled to qualified immunity now because we don't have the power to entertain it. It would only be if the fact pattern, as the plaintiff spun it out, necessarily yielded the conclusion that you were entitled to qualified immunity. If you accepted everything the plaintiff said as true, the defendant would still be entitled to qualified immunity because there would be no way that it violated clearly established law. What am I missing? Time has expired. If I may answer the question, your honor. You sure may. Under your reasoning, your honor, if there were body cam footage up on the scene that clearly refuted what a plaintiff said in terms of the incident and the plaintiff puts in their response to a motion for summary judgment their version of the fact that is night and day completely refuted by the body cam footage. We would not be entitled to an interlocutory appeal if the district court judge said I just don't believe what the video says because you're saying there would be it would just be the fugitive. No, that wasn't the thrust of my question began with. I wanted you to assume for the purposes of my question that the video was ambiguous, not that it was clear. You may be right that if the video was clear, you would be entitled to qualified immunity as soon as you could get it and you wouldn't be asked to run the gauntlet of a trial. But I'm asking you if the video is ambiguous and if it's unclear whether the dispatcher told the officers it was an armed robbery of a bank or fraud or nothing and if you accept the plaintiff's account of what happened that he didn't resist, he didn't rip the shirt, he wasn't resisting arrest, he wasn't trying to flee. They had secured him and they just flipped him down and punched him out. You would agree under those circumstances there would be no interlocutory jurisdiction, right? Well, respectfully, ambiguity is in the eyes of a holder. So how would how would how would an officer know whether they can take an appeal until the until the appellate court looks at the video and says we think that's ambiguous? If you really can't answer the question from the video, that's what the district judge said. But if that appeared to be right, would there be jurisdiction for us to entertain the matter? We've got eyes to see. We can look at the video for sure, but if it's ambiguous and unclear, would there be jurisdiction now? No, it would be an issue of fact. You're right, Your Honor. That's all I was asking. I'm sorry. Thank you very much. Ms. McNulty, you've reserved some time for rebuttal. Let's hear from Mr. Reed David. Thank you, Your Honors, and may it please the court. Jordan Reed David on behalf of the appellee, Brian White, we're asking this court to affirm the district court's denial of the two officers' motion for summary judgment. I'd like to begin by acknowledging that I do think the district court did not discredit the video but simply concluded, as this court just recently remarked, that the video was ambiguous at best or simply did not conclusively refute the plaintiff's statement of facts. This is an appeal from essentially two claims, one sounding an excessive force and the other related state law battery. The district court's decision to deny qualified immunity as a basis for summary judgment was based on the fact that there were genuine issues of material fact and that the video does not conclusively disprove the plaintiff's theory. This is Judge Wilson. Why don't you tell us whether or not this is an immediately appealable final decision because I do not recall that discussion in your brief. Your Honor, it's correct. It was not raised in our brief. It was raised earlier with the best of my knowledge. I think the Supreme Court, in I think the case was Johnson v. Jones, held that interlocutory appellate jurisdiction does not exist even for the denial of qualified immunity and summary judgment orders unless it is to address this question that's solely of a legal in nature, meaning whether it implicated a federal constitutional right that was clearly established and whether the facts are alleged in favor of the plaintiff violated that clearly established right. As this case has been flushed out and with the record before this court, in light of the questioning, the appellee would acknowledge that it appears there is a fatal jurisdictional defect in the appellant's direct appeal, excuse me, interlocutory appeal that would be dispositive of the issue. I was hesitant to begin with that given that I didn't brief it, but since the court is addressing it, I do believe it is a fatal flaw. Even if this court were to get over the jurisdictional barrier to reach the merits of the appellant's claim, nevertheless, the decision would be the same, which is that the appellants are not entitled to a reversal with a mandate to impose summary judgment on the grounds of qualified immunity. Much of the appellant's factual argument, the legal argument, rests on the premise that Mr. White was either actively resisting or actively attempting to evade by flight, which of course is the third of three grand factors. But if you look at page 15 of the appellant's brief, you'll acknowledge what they say is that the video footage, quote, supports an inference that White was actively resisting, end quote. And that's, of course, a far cry from video clearly contradicting. While the video may or may not support an inference of active resistance, it equally supports the opposite conclusion, and therefore summary judgment was not appropriate and the district court did not err. When it comes to that latter part of the third grand factor, which is attempting to evade by flight, it's important to mention that while the appellants argued that Mr. White stood up on his own volition and took a few steps, and then Mr. White says, actually, I was pulled up and trying to gain my balance, but they threw me back. In the context of qualified immunity, excessive force cases, and video, the appellant cited two cases to this court. In its initial brief, it cited Shaw versus City of Selma, a decision by this court, I think it was 2018. And then in the reply brief, they cited the more recent Baker versus Clements from this court in 2019. Now, both citations to those cases were for very simple legal premises. The facts were not really gone into exhaustively, although admittedly some for Baker were. But I think it's important to remember Shaw versus City of Selma is a case where police officers responded to a call involving a mentally disturbed man who was trying to enter a restaurant and turned away. The police had actual knowledge. He had previously tried to go to that restaurant with a knife a few days before. And when the police showed up that day in Shaw, the person grabbed a hatchet and disobeyed, I think it was 26 separate orders to put it down, and then started walking towards the policeman who ultimately shot and killed him. That case was decided on video based on the second grand factor, which is whether or not the suspect posed an immediate threat. Obviously in Shaw, someone approaching a police officer with a hatchet after minutes of refusing to comply is a far cry from what we have here where there's no evidence of any weapon whatsoever. And of course, Mr. Wright's rendition of what happened doesn't even come close to the immediate threat. You then look to Baker versus Clements, and I think that's the case that if anything does touch on the third grand factor, but again, falls in favor of Mr. White as it applies to this case, not the two appellants. Baker versus Clements is a routine traffic stop for a cracked taillight and some lighting on the tag. There's dash cam video and audio, which I think is really important, just this court in that case made clear to acknowledge that there was also audio. When the officer asked the driver of the vehicle, the ultimate plaintiff in the lawsuit, to step forward, excuse me, step back behind the vehicle, and there's a discussion, there's an odor of marijuana. When consent for searching the vehicle was asked for, the person began to run away, sprint away. That is precisely what active evasion by flight is. That is what was contemplated by the Supreme Court in grand for its third factor. That is why this court correctly decided Baker, because there was conclusive evidence on video that he ran away, active flight. We don't have that in this case. I just think that when you look at all three grand factors, they were genuine issues of material fact. The district court got it correct. While this court has acknowledged and certainly we acknowledge that later the two appellants at trial are entitled to try and reassert it and make that argument and may later try and seek relief from this court after a judgment if there is an adverse judgment against them, the time for it is not now. Even if it were, jurisdictionally speaking, on the substantive merits, there is simply no reason to reverse even on a de novo view. Unless this court has any other questions, I'd like to yield the rest of my time with one final comment, which is simply this. The briefs by the appellants, both the initial and reply brief, have numerous, numerous references or characterizations of evidence in the record below that there was a dispatch call or radio call about an armed robbery. I will simply say this. If you look at the plaintiff's initial brief, I believe it's page 15 of the initial brief and then it appears again in the reply brief at page four, the only citation offered by the appellants is to a singular paragraph, paragraph two, in their two respective affidavits, which are largely identical. Those affidavits appear in the appendix in volume one at page 67 and 70, respectively. If you look at paragraph two, the word radio is never mentioned, the word dispatch is never mentioned, police department is never mentioned. Actually, what it says is that there was a call made to the city of Miami. A call being made to the city of Miami is consistent with what actually happened, which is that an onlooker, passerby, who was related to the victim in this case, I believe it was his father, made a call to the city of Miami, but he did not report an armed bank robbery and in fact confirmed upon further questioning that he was unaware whether or not there were any weapons whatsoever. I just wanted to point out that distinction, that to the extent any of the appellant's arguments rest on the factual premise that there is some record evidence that clearly established that there was a dispatch that said A, B, or C. We don't have the audio version of it and frankly, even the two officers when drafting their own affidavits, which likely were intended to support their assertion of qualified immunity, the only paragraph cited doesn't even mention it and even if you read it in context with the following paragraphs, it just simply continues to relate back to what in the plain language would be a 911 call as opposed to dispatch. We would ask this court to affirm the district court's denial of summary judgment and if there are no other questions, I'll yield the rest of my time. Thank you. Thank you, counsel. Ms. McNulty, you've reserved some time for rebuttal. Yes, your honor. Just a quick response to opposing counsel's point about the affidavits said that when they were on scene for the arrest, it says that at this point, the only information that the officers at the scene had was that these individuals had been positively identified by an eyewitness as armed bank robbers who had immediately undertook to engage officers in a dangerous pursuit and the idea that police officers somehow have information directly from a member of the public that was called into 911 and that there's no involved in between, I'm not really understanding that logic, but okay. With respect to the legal arguments, the officers would again just assert that it is the officer's position that the video, particularly those nine seconds pointed out in the brief, it contradicts the testimony of White and his deposition. His deposition testimony is clearly that his hands were restrained behind his back and he was lifted up and thrown to the ground and his nose broken when he hit the ground at that point. The video shows that his hands were loose and his feet were on the ground taking steps and that that would justify the force that was used to redirect him to the ground and handcuff him. Respectfully, the officers would ask that Thank you, Ms. McNulty and Mr. Redavid.